**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2499-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILMER M. REYES,

     Defendant-Appellant.

_____

Submitted August 2, 2022 – Decided August 9, 2022

Before Judges Geiger and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment Nos. 14-11-3597 and 16-06-1751.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Wilmer M. Reyes appeals from a Law Division order denying his motion for post-conviction relief (PCR). On appeal, defendant challenges trial counsel's effectiveness, claiming counsel failed to advise him about the immigration consequences of his guilty pleas, and claims the court erred by denying PCR without conducting an evidentiary hearing. We affirm.

We take the following facts from the record. In November 2014, defendant was charged in Indictment No. 14-11-3597 with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1), and third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3).

In May 2015, defendant pled guilty to third-degree possession of CDS in exchange for a recommended two-year non-custodial term of probation and dismissal of the other count. During the plea hearing, defendant acknowledged that he understood the charges he faced and the terms of the plea agreement, had enough time to discuss the case with counsel, was satisfied with the services of counsel, reviewed the questions on the plea forms with counsel and understood the questions, answered the questions truthfully, signed and initialed the plea forms, and understood the rights he was waiving by pleading guilty. Defendant further acknowledged he was born in the Dominican Republic and was not a

A-2499-20

United States citizen.  The court engaged in the following colloquy with defendant regarding the immigration consequences of his guilty plea, with a brief interjection by his counsel, Patrick E. Malloy:

THE COURT:     Sir, do you understand that if you're not a citizen of the United States, the guilty plea may result in your removal from the United States or stop you from being legally able to enter or reenter the United States?

DEFENDANT:    Yes.

THE COURT:     You also understand that you have a right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status; do you understand that, sir?

DEFENDANT:     Yes.

THE COURT:     Sir, have you discussed with an attorney the potential immigration consequences of this plea?

DEFENDANT:    No.

THE COURT:     You circled yes.

MR. MALLOY:  Judge, he discussed it with me.

DEFENDANT:    Yeah.

THE COURT:     Okay.

MR. MALLOY:  He –

3

THE COURT: Sir, would you like the opportunity to do so, sir?

DEFENDANT: No.

THE COURT: You're sure, sir?

DEFENDANT: Yes.

THE COURT: Sir, having been advised of the possible immigration consequences and your right to seek individualized legal advice on you immigration consequences, do you still wish to plead guilty, sir?

DEFENDANT: Yes.

THE COURT: Okay. And sir, you understand that with this type of sentence, where it has a possible penalty of up to five years, you could be deported, sir; do you understand?

DEFENDANT: Yes.

Defendant acknowledged that he was pleading guilty voluntarily, was not under the influence of any medication, drugs, or alcohol, understood the charge he was pleading guilty to, and provided a factual basis for illegally possessing heroin. Defendant indicated he had no questions for his attorney or the court. The judge accepted the guilty plea, finding it was entered knowingly and voluntarily and was supported by an adequate factual basis.

Defendant was sentenced on July 24, 2015. The judge found aggravating factors three (risk of reoffending), six (prior criminal record), and nine (need for

deterrence). N.J.S.A. 2C:44-1(a)(3), (6), and (9). The judge also found mitigating factors six (defendant will compensate the victim), and ten ("defendant is particularly likely to respond affirmatively to probationary treatment"). N.J.S.A. 2C:44-1(b)(6) and (10). The judge found that the mitigating factors outweighed the aggravating factors. Defendant was sentenced in accordance with the plea agreement to a non-custodial two-year probationary term and thirty hours of community service. The other charges were dismissed.

On March 6, 2016, defendant was arrested in Camden for eluding and other offenses. In June 2016, defendant was charged in Indictment No. 16-06-1751 with: second-degree eluding, N.J.S.A. 2C:29-2(b); third-degree receiving stolen property, N.J.S.A. 2C:20-7(a); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) second-degree unlawful possession of a weapon (handgun), N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); three counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); three counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and 2C:12-1(b)(1); third-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and 2C:12-1(b)(2); and third-degree

receiving stolen property, N.J.S.A. 2C:20-7(a). Defendant was represented by different counsel on the second indictment.

The new charges resulted in a violation of probation (VOP) charge. Defendant did not contest the VOP.

In September 2016, defendant pled guilty to second degree eluding in exchange for a concurrent eight-year prison term, with no objection by the State to intensive supervised parole, and dismissal of the remaining counts. During the plea hearing, defendant testified that he understood English and had completed high school. When asked if he was a citizen of the United States, defendant answered: "Yes." Defendant acknowledged that he understood the charges, had a sufficient opportunity to discuss the charges and the proposed plea agreement with counsel, and was fully satisfied with counsel's advice and services. He further acknowledged that he reviewed the plea forms with counsel, read and understood the information on the plea forms, and answered all the questions on the forms truthfully, understood the rights he was waiving by pleading guilty, and was pleading guilty voluntarily. Defendant also acknowledged that his guilty plea was a per se violation of his probation. Defendant then gave a factual basis for his plea and acknowledged that he was pleading guilty because he was guilty. The judge accepted the guilty plea,

A-2499-20

finding the plea was "entered knowingly and voluntarily, and that there [was] an adequate factual basis for the plea."

Defendant was sentenced on October 21, 2016. The judge found aggravating factors three, six, and nine, no mitigating factors, and that the aggravating factors outweighed the non-existent mitigating factors. The judge sentenced defendant to an eight-year term and dismissed the remaining counts in accordance with the terms of the plea agreement.

On the VOP, the judge found the guilty plea to eluding was a per se VOP. The judge found aggravating factors three, six, and nine, determined that mitigating factors six and ten no longer applied, and found the aggravating factors outweighed the mitigating factors. The judge terminated defendant's probation and resentenced him to a concurrent three-year term.

Defendant did not file a direct appeal from his conviction or sentence on either indictment. Nor did he file a motion to withdraw either of his guilty pleas.

On October 20, 2020, defendant filed a timely motion for PCR based on ineffective assistance of counsel. Defendant submitted a certification in support of the motion, which stated that at the time of the plea on the first indictment, trial counsel Patrick Malloy

> reviewed the entire plea agreement form with me and
> wrote or circled my answers. When I was before [the

A-2499-20

trial judge], the [c]ourt asked me, "Sir, have you discussed with an attorney, the potential immigration consequences of this plea?" I responded "no." The [c]ourt said, "You circled Yes." Mr. Malloy responded to the [c]ourt[,] "Judge, he discussed it with me." I responded "Yeah."

Defendant represented that he "was not advised by Mr. Malloy at any time during or prior to the [p]lea [h]earing of specific immigration consequences which would result from my guilty plea." Defendant further represented that when he appeared for sentencing on the first indictment, neither his "immigration status nor the possible immigration consequences of [his] [s]entence, were addressed by either the [c]ourt or [his] attorney."

Defendant acknowledged that during the plea hearing on the second indictment, he responded affirmatively when asked by the same trial judge if he was a citizen of the United States. Defendant alleges he "obviously misunderstood the question and answered 'Yes' by mistake. What added to the confusion was my knowledge that when I pled guilty previously before the same [j]udge, he questioned me about my immigration status and he knew I was not a citizen." Defendant noted that neither his immigration status nor the consequences of his plea were discussed during the sentencing hearing.

Defendant challenged his plea, conviction, and sentence on that basis. He noted the ICE detainer pending against him since March 2016.

8

A different judge heard oral argument on the PCR motion on February 8, 2021, and rejected defendant's claim of ineffective assistance of counsel. In his comprehensive oral decision, Judge Mark K. Chase recounted the procedural history, defendant's answers to questions on the plea forms regarding his immigration status and consequences, and pertinent testimony during the plea hearings.

After reviewing the applicable case law, Judge Chase found that during the first plea hearing, defendant was advised and acknowledged that his plea could have deportation consequences, and that he could have more time to speak with an immigration attorney, but he expressed his desire to nonetheless proceed with his guilty plea.

Judge Chase recounted defendant's answers to questions 17A, 17B, 17C, 17D, and 17F of the plea forms as to the first indictment.

> First, question 17A of the plea form pertaining to defendant's CDS conviction asked defendant if he was a United States citizen. "No" is circled in response. Question 17B asked, "Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States?" The "Yes" response is circled.
>
> Question 17C asked, "Do you understand that you have the right to seek individualized advice about the affect your guilty plea will have on your

 A-2499-20

immigration status?"  The "Yes" response was circled. Finally, question 17D says, "Have you discussed with an attorney the potential immigration consequences of your plea?"  The "Yes" response is circled.

The plea form . . . directed that if . . . if the answer is yes, to proceed to question 17F.  17F asked, "Have you been advised of the possible immigration consequences and of your right to seek individualized legal advice on your immigration consequences?  Do you still wish to plead guilty?"  "Yes" is circled in response.

Judge Chase then discussed defendant's related testimony.

The record reflects during defendant's plea hearing on his CDS conviction Judge Polansky asked the defendant if he went over the plea form with his counsel, he understood each question, he gave counsel truthful answers, if counsel wrote answers as the defendant provided them, and if he reviewed the answers after they were written.  To each question, defendant answered in the affirmative.  Defendant additionally answered in the affirmative that he signed and initialized the forms certifying they contain truthful answers.  This line of questioning also pertains to question 17, which pertains to immigration consequences and defendant's right to seek individual immigration advice.

After reciting defendant's testimony regarding immigration consequences,

Judge Chase explained:

In addition to the conversations that may have taken place off the record with Mr. Malloy, defendant is questioned by Judge Polansky more than once whether he would like to seek independent legal advice

10

regarding the immigration consequences of his plea and whether he still wishes to plead guilty. Nothing in this record reflects that counsel's performance was substandard, that Mr. Malloy has a lack of [knowledge of] Federal immigration law, and that the counsel -- or that Mr. Malloy was seriously hindered in his representation of defendant.

The Padilla[1] court holds that counsel must inform . . . the court whether the plea carries a risk of deportation. Based on the plea transcript, Mr. Malloy did, in fact, go through the plea form with defendant where he would have had the opportunity to inform his client that his plea carries a risk of deportation.

Judge Chase then addressed the second indictment:

As to defendant's eluding conviction, the record demonstrates that defendant maintained he was a U.S. citizen in the plea form when yes was circled in response to question 17A, which asked the defendant if he was a citizen of the United States.

Furthermore, the defendant answered N/A, not applicable, in response to question 17D, which asked the defendant if he had discussed the immigration consequences of his plea. As the plea colloquy demonstrates in response to Judge Polansky's question of whether defendant was a United States citizen, defendant replied, "Yes." This was consistent with the plea form on his eluding conviction where question 17 asked if defendant was a United States citizen, and "Yes" was circled.

The defendant also acknowledged in response to the judge's question that he read and understood all the

---

[1] Padilla v. Kentucky, 559 U.S. 356 (2010).

A-2499-20

questions and information in the plea form. He answered them truthfully, that if the judge asked the same questions again, his answers would be the same. Indeed, defendant gave the same response when Judge Polansky asked if he was a citizen and defendant replied "Yes." While defendant now claims he answered the question in error, his mistake cannot be attributed to his counsel to establish deficiency.

Judge Chase distinguished the facts in State v. Nuñez-Valdéz, 200 N.J. 129 (2009) and Padilla.

> Unlike in Nuñez-Valdéz, defendant here was not given assurances, nor does he contend that counsel materially misinformed him about the immigration consequences of his plea. And unlike in Padilla, defendant was not told to not worry about the immigration consequences.
>
> . . . .
>
> It is also important to note Judge Polansky advised defendant that he had the right to seek independent legal advice regarding his immigration status; to which, defendant declined.

Considering these facts, Judge Chase reasoned:

> In this matter, not only did defendant Reyes' attorney performance not fall below the professional norm, he did not give defendant Reyes false, misleading -- misinformed or inadequate advice, but the second prong in either matter has not been met that he was prejudiced.
>
> Accordingly, this Court finds defendant has not satisfied that first prong for . . . ineffective assistance of counsel. Even if, as I was just saying, there was

12

ineffective assistance of counsel, . . . defendant has not demonstrated that the outcome of the proceeding may have been different.

In regards to that, we do have to ask if there is a reasonable probability that but for counsel's unprofessional errors -- which I found here were professional -- the results of the proceedings would have been different. This second prong requires demonstrating that defendant was actually prejudiced by counsel's alleged deficient performance. This requires a demonstration or reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different. Only the complete denial of one[']s rights to counsel justifies the reviewing court to presume defendant was prejudiced.

For these reasons, Judge Chase found defendant did not show trial counsel's performance was deficient or that defendant was prejudiced. As to the prejudice prong, the judge further reasoned that

the plea form and the plea hearing colloquy demonstrates, defendant was told that he could be deported as a result of his guilty plea, and that he would seek individualized advice from the attorney regarding immigration consequences. He acknowledged that and indicated he understood that; and he also indicated that he did not want to do that, but he wanted to go forward with the plea.

The judge also noted that on the second indictment, the plea agreement avoided potential consecutive sentences and serious aggravated assault and Graves Act, N.J.S.A. 2C:43-6, charges were dismissed. Additionally,

A-2499-20

[defendant] was presented with an opportunity to not accept the plea, to seek legal advice from an immigration attorney, and he could have asked the court to do so. However, he chose to knowingly and voluntarily enter his plea agreement rather than proceed to trial.

His decision to proceed with the plea is not the product of substandard performance of his attorney. He has not shown, but for the substandard performance of the attorney, the outcome of the case may have been different. As such, defendant has . . . failed to demonstrate that but for counsel's alleged error, there was a reasonable probability that he would not have pleaded guilty and would have insisted on proceeding to trial on the charges under the full indictment.

. . . .

And in regards to the second case, defendant lied under oath and stated he was a citizen. He should not be able to benefit from these misdeeds now that he's been caught and placed in an ICE facility.

The judge concluded that defendant had not established a prima facie case of ineffective assistance of counsel and was not entitled to an evidentiary hearing. Accordingly, his PCR application was denied as to both indictments.

This appeal followed. Defendant argues he was entitled to an evidentiary hearing on his claim that trial counsel rendered ineffective assistance of counsel by failing to inform him adequately of the deportation consequences of his pleas.

14                                                                  A-2499-20

We disagree and affirm substantially for the reasons expressed by Judge Chase in his comprehensive oral decision. We add the following comments.

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014). We review a PCR court's legal conclusions de novo. State v. Nash, 212 N.J. 518, 541 (2013).

When considering ineffective assistance of counsel claims, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption" that counsel's performance was reasonable. Strickland v. Washington, 466 U.S. 668, 689 (1984). To succeed on an ineffective assistance of counsel claim, a defendant first must establish "counsel's representation fell below an objective standard of reasonableness" and, second, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694; accord State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged standard). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

15

Both the United States Supreme Court and the New Jersey Supreme Court have extended the Strickland/Fritz test to challenges of guilty pleas based on ineffective assistance of counsel. Lafler v. Cooper, 566 U.S. 156, 162-63 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); State v. DiFrisco, 137 N.J. 434, 456-57 (1994). Defendant must demonstrate with "reasonable probability" that the result would have been different had he received proper advice from his attorney. Lafler, 566 U.S. at 163 (quoting Strickland, 466 U.S. at 694). Thus, in a conviction based on a guilty plea, defendant must show "a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted), and doing so "would have been rational under the circumstances," Padilla, 559 U.S. at 372. See also Nuñez-Valdéz, 200 N.J. at 139 (adopting the same test for ineffective assistance of counsel claims).

A defendant is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing State v. Preciose, 129 N.J. 451, 462 (1992)). An evidentiary hearing is required only when: a defendant establishes a prima facie case in support of PCR; the court determines there are disputed issues of material fact that cannot be resolved by review of the existing record; and the court

16

determines that an evidentiary hearing is required to resolve the claims asserted. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). To establish a prima facie case of ineffective assistance of counsel, a defendant must present legally competent evidence rather than mere "bald assertions." Cummings, 321 N.J. Super. at 170. We review a trial court's decision to deny a defendant's request for an evidentiary hearing under an abuse of discretion standard. State v. Russo, 333 N.J. Super. 119, 140 (App. Div. 2000).

"It is now well-settled that a defense attorney 'must tell a client when removal is mandatory – when consequences are certain' in order to provide effective assistance of counsel." State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020) (quoting State v. Gaitan, 209 N.J. 339, 380 (2012)). "Accordingly, 'when counsel provides false or affirmatively misleading advice about the deportation consequences of a guilty plea, and the defendant demonstrates that he would not have pled guilty if he had been provided with accurate information, an ineffective assistance of counsel claim has been established.'" Ibid. (quoting Gaitan, 209 N.J. at 351).

"Conversely, where 'the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration

consequences.'" Ibid. (quoting Padilla, 559 U.S. at 369); see also Gaitan, 209 N.J. at 381 (holding that where deportation is not mandatory, "counsel must highlight for noncitizen clients that entering a guilty plea will place them at risk of removal"). "Failure by counsel to adhere to these requirements constitutes deficient representation, satisfying the first prong of the Strickland/Fritz standard." L.G.-M., 462 N.J. Super. at 365; see also Padilla, 559 U.S. at 369; Gaitan, 209 N.J. at 380 (same).

Governed by these standards, we agree with Judge Chase that defendant failed to satisfy either prong under the Strickland/Fritz test and was unable to demonstrate a reasonable likelihood his PCR claims would ultimately succeed on the merits. We reach this conclusion for several reasons. Trial counsel did not affirmatively misrepresent the immigration consequences of the guilty pleas. The plea forms and plea hearing testimony belie defendant's claims. Trial counsel successfully negotiated a favorable plea agreement that resulted in the dismissal of numerous serious charges and avoided consecutive prison terms. The evidence against defendant on both indictments and the VOP was strong. Defendant has not proffered any viable defense to the charges he faced. More fundamentally, defendant has not demonstrated there was a reasonable

18

probability that but for counsels' alleged errors, he would not have pleaded guilty and insisted on going to trial, and that doing so would have been rational.

In sum, defendant did not satisfy either prong of the <u>Strickland</u>/<u>Fritz</u> test. PCR was properly denied without conducting an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2499-20